# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| FANTASIA ENTERPRISES, LLC, | ) | CASE NO. 5:25-cv-77 |
| | ) | |
| | ) | |
| Plaintiff, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| KARMA GEMS, LLC, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court is plaintiff Fantasia Enterprises, LLC's ("Fantasia") unopposed motion for default judgment against defendants Karma Gems, LLC ("Karma Gems") and Maharshi Bhagirath Sompura ("Megh") pursuant to Fed. R. Civ. P. 55(b). (Doc. No. 16 (Motion).) In support of the motion, Fantasia included an affidavit from its president, David Suit ("Suit"). (Doc. No. 16-1 (Affidavit in Support).)

**I.  BACKGROUND**

Karma Gems and Megh were properly served with a summons and the complaint (Doc. Nos. 8, 9 (Returns of Service)) but failed to file a responsive pleading or otherwise defend the lawsuit.[1] (*See* Doc. No. 16.) Default was entered against both defendants (Doc. No. 14 (Default Entry)), and a copy of the default entry was mailed to each defendant at their addresses of record.

---

[1] Service was not executed on a third defendant, Megh's unnamed spouse. (*See* Doc. No. 11 (Return of Service by Clerk unexecuted upon Megh' unknown spouse).) Fantasia does not move for default judgment against the unknown spouse. (*See* Doc. No. 13 (Application to Clerk for entry of default against Karma Gems and Megh).)

Once default is entered, the defaulting party is deemed to have admitted all the well-pleaded factual allegations in the complaint regarding liability, including jurisdictional averments. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citing *Visioneering Constr. v. U.S Fid. & Guar.*, 661 F.2d 119, 124 (6th Cir. 1981)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). The following factual allegations from the complaint are deemed admitted due to defendants' default.

Fantasia is an Ohio-based rock, gem, and mineral wholesaler, supplier, and retailer. (Doc. No. 5 ¶¶ 1, 8.) Karma Gems is a New Jersey-based rock, gem, and mineral wholesaler, supplier, and retailer. (*Id.* ¶¶ 2, 10.) Megh, the sole proprietor of Vara Crystals, is a manufacturer and distributor of Indian rocks, gems, and minerals. (*Id.* ¶¶ 3, 9.) Megh also does business through Karma Gems. (*Id.* ¶ 3.)

Between April 10, 2022, and September 26, 2022, Fantasia made four purchase orders for stone products from Megh, through Megh's company, Vara Crystals, for a total sum of $455,689.06. (Doc. No. 5 ¶ 14.) The parties agreed that Fantasia would prepay 65% to 75% of each purchase order before shipment, with the balance due upon receipt of the product. (*Id.* ¶ 17.) Megh represented that the maximum delivery time for each order would be 54 days. (*Id.*)

Megh did not timely deliver the purchased product. (*Id.* ¶ 20; *see generally* Doc. No. 5-2 (log of messages between Megh and Fantasia about the purchase orders), at 1.)[2] One shipment was never received. (Doc. No. 5 ¶¶ 21–22.) Another was comprised of "primarily valueless 'junk

---

[2] Page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

2

stones'[.]" (*Id.* ¶ 24 (Fantasia alleging that only 12 of the 40 pallets it received were the product Fantasia ordered).) Other shipments were substantially delayed. (*See generally* Doc. No. 5-2.) And despite the 65% to 75% prepayment agreement (*see* Doc. No. 5 ¶ 17), Megh repeatedly asked for additional funds, explaining he needed extra money to ship the orders. (Doc. No. 5-2, at 1 (Megh asking for additional funds on 2/21/2023, 4/21/2023, 11/6/2023, and 11/7/2023).) Fantasia agreed to pay some of Megh's additional requests pre-shipment. (*See generally id.* at 1–2.)

On December 1, 2022, Fantasia and Megh's company, Vara Crystals, entered into an exclusivity agreement (*see* Doc. No. 16-2 (Exclusivity Agreement)) whereby, between December 1, 2022, and December 1, 2024 (the "exclusivity period"), Vara Crystals agreed to only[3] sell product to Fantasia and Fantasia agreed to only buy product from Vara Crystals.[4] (*Id.* at 1.) Yet in May 2024, Megh successfully solicited Fantasia's Pigeon Forge customer to buy Karma Gems's products. (Doc. No. 5 ¶ 32.)

Fantasia seeks a default judgment against Karma Gems and Megh on the complaint, including damages from Karma Gems in the amount of $54,325, plus 8% interest per annum and court costs, and from Megh in the amount of $445,901.03, plus 8% interest per annum and court costs. (Doc. No. 16, at 5.)

---

[3] The exclusivity agreement included an exemption for online sales, subject to pricing limitations. (Doc. No. 16-2, at 2.) Online sales are not at issue here.

[4] Additionally, the parties agreed that the contract would be governed by Ohio law and that "any disputes will be brought in the court in Summit County, Ohio." (*Id.* at 5.) This Court is one of several courts located in Summit County, Ohio. Because the agreement does not identify a specific court—and instead names a geographic location—this Court has jurisdiction. *See Se. Commc'n Serv., Inc. v. Allstate Tower, Inc.*, No. 4:8-cv-13, 2008 WL 1746638, at *3 (W.D. Ky. Apr. 14, 2008) (finding a forum selection clause limiting litigation to a court in Henderson County would not bar a suit in federal court if there "were actually [a federal court] physically located in Henderson County[.]").

## II. STANDARD OF REVIEW

Under Rule 55(b)(2), the Court may enter default judgment without a hearing but may conduct a hearing if the Court needs to: (1) conduct an accounting; (2) determine the amount of damages; (3) establish the truth of any allegations by evidence; or (4) investigate any other matter. Fed. R. Civ. P. 55(b)(2). The decision to grant default judgment is within the Court's discretion. *See AF Holdings LLC v. Bossard*, 976 F. Supp. 2d 927, 929 (W.D. Mich. 2013) (citations omitted). Thus, defendants' default does not automatically entitle Fantasia to relief. *Id.*

To rule on Fantasia's motion, the Court must determine whether the factual allegations in the complaint, deemed admitted by defendants' default, are sufficient to satisfy the elements of the legal claims for which Fantasia seeks default judgment. *See Zinganything, LLC v. Imp. Store*, 158 F. Supp. 3d 668, 672 (N.D. Ohio 2016) (citation omitted); *see also Kwik–Sew Pattern Co. v. Gendron*, No. 1:8-cv-309, 2008 WL 4960159, at *1 (W.D. Mich. Nov. 19, 2008) ("[A] court may not enter default judgment upon a legally insufficient claim." (citations omitted)). Legal conclusions in the complaint are not deemed admitted by a defendant's default.

Though well-pleaded allegations in the complaint as to liability are taken as true when a defendant is in default, the same does not apply to damages. *Ford Motor Co.*, 441 F. Supp. 2d at 848 (citations omitted). A default judgment for damages is appropriate in instances when a plaintiff's claim is for a sum certain—or a sum that may be made certain. Fed. R. Civ. P. 55(b)(1). A plaintiff must "establish that the damages requested are such that may be computed to a sum certain and [] present an affidavit computing [those] damages." *Petronykoriak v. Equifax Info. Servs. LLC*, No. 19-cv-10784, 2019 WL 6912756, at *1 (E.D. Mich. Dec. 19, 2019) (citing *Meyer v. City of Cincinnati*, Nos. 90-3679, 90-3805, 1991 WL 165584, at *3 (6th Cir. Aug. 27, 1991)).

**III. DISCUSSION**

Fantasia sets forth eight causes of action: (1) breach of contract (Doc. No. 5 ¶¶ 36–41); (2) tortious interference with business relations (*id.* ¶¶ 42–44); (3) unjust enrichment (*id.* ¶¶ 45–49); (4) conversion (*id.* ¶¶ 50–55); (5) misappropriation of trade secrets (*id.* ¶¶ 56–62); (6) fraudulent misrepresentation (*id.* ¶¶ 63–68); (7) civil conspiracy (*id.* ¶¶ 69–72); and (8) breach of implied covenant of good faith and fair dealing. (*Id.* ¶¶ 73–79.) Based on the well-pleaded factual allegations in the complaint, the Court concludes that there is a sufficient basis for determining liability without a hearing. The Court addresses each claim against Karma Gems and Megh and then turns to Fantasia's requests for damages.

**A. Liability**

*1. Breach of Contract*

To prevail on this claim against Megh, Fantasia must show: (1) the existence of a contract; (2) performance by Fantasia; (3) breach by Megh; and (4) damage or loss to Fantasia. *See Spectrum Benefits Options, Inc. v. Med. Mut. of Ohio*, 880 N.E.2d 926, 934 (Ohio Ct. App. 2007) (quotation marks and citation omitted). The allegations in the complaint—deemed admitted by Megh's default—establish that Fantasia is entitled to default judgment for breach of contract.

First, the exclusivity agreement is a "binding contract supported by an offer, acceptance, and valid legal consideration." (Doc. No. 5 ¶ 38.) Second, "Fantasia substantially performed its obligations under the Exclusivity Agreement." (*Id.* ¶ 39.) Third, Megh has "materially breached and continues to materially breach" the agreement by failing to timely deliver the purchased product, delivering the wrong product, and by violating the agreement's exclusivity and confidentiality clauses. (*Id.* ¶ 40.)

5

With respect to Fantasia's first allegation of breach relating to delivery of the purchase orders (*id.*), the Court notes that all four orders were made *before* the exclusivity agreement commenced on December 1, 2022. (*See id.* ¶ 14 (table representing that all four purchase orders were made before December 2022).) Yet the exclusivity agreement provides that it "supersedes any prior written or oral agreements between the parties" and "contains the entire agreement of the parties regarding th[is] subject matter"—subject matter including the sale of stone products between Vara Crystals and Fantasia, and the timeliness of delivery thereof. (Doc. No. 16-2, at 5; *see generally id* (exclusivity agreement including sections on exclusivity, delivery times, and warranty).) Thus, the exclusivity agreement governs the four purchase orders. *See TRINOVA Corp. v. Pilkington Brothers, P.L.C.*, 638 N.E.2d 572, 576 (Ohio 1994) (finding that, where a subsequent contract unambiguously displays the parties' intention to supersede or modify terms in a previous contract, the terms of the subsequent contract will control).

Regarding timeliness, the exclusivity agreement provides that "Vara will do their best to deliver as quicky as possible the Products ordered by Fantasia[,]" but does not specify a timeframe. (Doc. No. 16-2, at 2.) "Ohio law recognizes that a party has a 'reasonable time' to demand delivery of performance when the promise to perform is clear but the contract fails to specify any time for performance." *Meyer Tool, Inc. v. Mikrolar, Inc.*, 210 N.E.3d 602, 608 (Ohio Ct. App. 2023) (citation omitted). To determine whether a party has breached a contract through unreasonable delay, the trier of fact must consider the circumstances contemplated by the parties at the time the contract was executed, and the circumstances surrounding performance. *Catz Ent., Inc. v. Valdes*, Nos. 07 MA 201, 07 MA 202, 08 MA 68, 2009 WL 3003925, at *7 (Ohio Ct. App. Sept. 17, 2009) (quotation marks and citation omitted).

6

On April 6, 2022, about eight months before the exclusivity agreement (*see* Doc. No. 16-2, at 1), Megh represented each purchase order would have a "maximum lead time" of 54 days. (Doc. No. 5 ¶ 17.) Some of the deliveries have still not been completed roughly three years later, during which time the parties entered into the exclusivity agreement stipulating that "[t]ime is of the essence" in their dealings with each other. (Doc. No. 16-2, at 2.) Additionally, nine messages sent between October 7, 2022, and February 21, 2023, reveal Fantasia repeatedly inquired about the status of its delayed purchase orders, and that Megh apologized, acknowledging that the shipments were getting delayed beyond the originally agreed-upon timeframe. (Doc. No. 5-2, at 1.) The circumstances contemplated by the parties at the time the agreement was executed indicate that a period of three years—more than 1000 days past Megh's original delivery estimate of 54 days (Doc. No. 5 ¶ 17)—is an unreasonable delay that constitutes breach of contract by Megh. *See Morton Bldgs., Inc. v. Correct Custom Drywall, Inc.*, No. 6AP-851, 2007 WL 1641155, at *4–5 (Ohio Ct. App. June 7, 2007) (affirming that a nine-month delay between promised performance and actual performance constituted a breach of contract in the context of circumstances originally contemplated by the parties).

Finally, Fantasia alleges it suffered financial damages (*see, e.g.,* Doc. No. 5 ¶¶ 22, 41) as well as nonmonetary reputational harm (*id.* ¶ 35) because of Megh's breach. Having properly pleaded factual allegations supporting a breach of contract claim, Fantasia is entitled to default judgment.

### 2. *Tortious Interference with Business Relations*

Fantasia alleges that Karma Gems and Megh induced harm to Fantasia's business relationship with its Pigeon Forge customer by intentionally delaying delivery of the purchase

7

orders and by soliciting that customer's business during the exclusivity period. (Doc. No. 5 ¶¶ 43, 44.) But when a defendant's breach of contract interferes with the injured party's business relations with third parties, the injured party is generally limited to an action for breach of contract. *See Digit. & Analog Design Corp. v. N. Supply Co.*, 540 N.E.2d 1358, 1368 (Ohio 1989) (citations omitted). "An exception exists, and a tort action may lie, only where the breaching party indicates, by his breach, a motive to interfere with the adverse party's business relations rather than an interference with business as a mere consequence of the breach." *Id.* (citation omitted); *see Key Realty, Ltd. v. Hall*, 173 N.E.3d 831, 854 (Ohio Ct. App. 2021). Fantasia has not alleged that Megh or Karma Gems had a motive to interfere with its business relationship that was not merely incidental to the breach of the exclusivity agreement. *See Reengineering Consultants, Ltd. v. EMC Corp.*, No. 2:8-cv-47, 2009 WL 113058, at *7 (S.D. Ohio Jan. 14, 2009) (finding tortious interference claim was barred where the parties had a contract and plaintiff did not allege that defendant's solicitation of its customers "was the result of some ulterior motive"). Default judgment is denied on this claim.

### 3. Unjust Enrichment

Fantasia also asserts that Megh was unjustly enriched through the parties' business dealings. (Doc. No. 5 ¶¶ 45–49.) But "[u]njust enrichment operates in the absence of an express contract or a contract implied in fact to prevent a party from retaining money or benefits[.]" *Gallo v. Westfield Nat'l Ins. Co.*, No. 91893, 2009 WL 625522, at *3 (Ohio Ct. App. Mar. 12, 2009) (citations omitted). Default judgment is denied on this claim because the well-pleaded allegations establish that Fantasia and Megh had an express contract. (*See generally* Doc. No. 5.)

*4. Conversion*

Likewise, although Fantasia alleges that Megh wrongfully converted Fantasia's property (Doc. No. 5 ¶¶ 50–55), conversion and breach of contract are alternate causes of action. *Boston v. Sealmaster Indus.*, No. E-3-4, 2004 WL 1810324, at *8 (Ohio Ct. App. Aug. 13, 2004) (citing *Richardson v. Shaw*, 209 U.S. 365, 382–83, 28 S. Ct. 512, 52 L. Ed. 835 (1908)). "An award on both claims would amount to double recovery." *Patel v. Strategic Grp., L.L.C.*, 161 N.E.3d 42, 52 (Ohio Ct. App. 2020) (citation omitted). Default judgment is thus denied on this claim.

*5. Misappropriation of Trade Secrets*

To prevail on the misappropriation of trade secrets claim against Megh and Karma Gems, Fantasia must demonstrate: (1) the existence of a trade secret; (2) the acquisition of a trade secret as a result of a confidential relationship; and (3) the unauthorized use of a trade secret. *Tomaydo-Tomahhdo L.L.C. v. Vozary*, 82 N.E.3d 1180, 1184 (Ohio Ct. App. 2017) (citing *Heartland Home Fin., Inc. v. Allied Home Mortg. Cap. Corp.*, 258 F. App'x. 860, 861 (6th Cir. 2008)). Ohio's Uniform Trade Secrets Act ("OUTSA") defines a trade secret as "business information or plans, financial information, or listing of names, addresses, or telephone numbers" that are "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Ohio Rev. Code § 1333.61(D).

First, Fantasia alleges Megh accessed its "customer lists, contacts, pricing information and structures, product ideas, product costs, and pricing data." (Doc. No. 5 ¶ 57.) This information qualifies as a trade secret under OUTSA because (1) it "derives independent economic value" from not being known to others (*id.* ¶ 58) and (2) Fantasia has taken reasonable steps to preserve its secrecy by "requiring Megh to execute the Exclusivity Agreement[,]" by limiting access to the

9

information on a "'need to know' basis[,]" and by "preventing its dissemination to competitors and to the public at large." (*Id.* ¶ 59.) Second, Megh acquired the information through a confidential relationship, as set forth in the exclusivity agreement. (*Id.* ¶ 57.) Third, Megh engaged in unauthorized use of the trade secrets "for himself and/or by conveying them to Karma" (*id.* ¶ 60) and Karma Gems "acquired, used, and/or misappropriated Fantasia's trade secrets[.]" (*Id.* ¶ 61. *See* Ohio Rev. Code § 1333.61(B) (defining "misappropriation" as disclosure of a trade secret without consent by a person who,"[a]t the time of disclosure or use, knew or had reason to know that the knowledge . . . was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use"). Fantasia is entitled to default judgment on this claim against Megh and Karma Gems.

### 6. *Fraudulent Misrepresentation*

Fantasia alleges Megh made multiple misrepresentations to Fantasia's president and other Fantasia personnel about delivery of the purchase orders. (Doc. No. 5 ¶¶ 64, 67.) But "[i]n Ohio, the existence of a contract action generally excludes the opportunity to present the same case as a tort claim." *Zoar View Wilkshire, LLC v. Wilkshire Golf, Inc.,* No. 2022-ap-1152, 2023 WL 5219461, at *3 (Ohio Ct. App. Aug. 14, 2023) (citation omitted); *see also Telxon Corp. v. Smart Media of Delaware, Inc.*, Nos. 22098, 22099, 2005 WL 2292800, at *13 (Ohio Ct. App. Sept. 21, 2005) (finding no actionable tortious misrepresentation occurred where tort claims were based on the same conduct from which breach of contract was claimed). Fantasia has not alleged that Megh's misrepresentations about the purchase orders are conduct independent from the breach of conduct allegations. (*Compare* Doc. No. 5 ¶¶ 63–68 (fraudulent misrepresentation allegations) *with id.* ¶¶ 36–41 (breach of contract allegations).) Default judgment is thus denied on this claim.

### 7. *Civil Conspiracy*

In its civil conspiracy claim, Fantasia asserts that Karma Gems and Megh formed a malicious enterprise for the purpose of causing harm to Fantasia by "breaching the Exclusivity Agreement, converting Fantasia's property, . . . interfering with Fantasia's business relationships and misappropriating trade secrets." (Doc. No. 5 ¶¶ 70–71.) But these are the same factual allegations underlying Fantasia's breach of contract claim (*compare id.* ¶¶ 69–72 (civil conspiracy allegations) *with id.* ¶¶ 36–41 (breach of contract allegations)), and "[a] tort claim based upon the same actions as those upon which a claim of contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract[.]" *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261,1270 (Ohio Ct. App. 1996) (citation omitted). Fantasia has alleged no such separate duty. *See K & D Farms, Ltd. v. Enervest Operating, L.L.C.*, No. 2015-ca-38, 2015 WL 6507785, at *8 (Ohio Ct. App. Oct. 26, 2015) (finding breach of contract alone does not give rise to a tort action, and breach of contract is not a tort, regardless of the motive (quotation marks and citations omitted)). Thus, default judgment is also denied on this claim.

### 8. *Breach of Implied Covenant of Good Faith and Fair Dealing*

Fantasia alleges Megh breached the implied covenant of good faith and fair dealing by "accepting payment for the Products, refusing to ship the Products, [and] violating the exclusivity clause [and] confidentiality clause[,]" among other things. (Doc. No. 5 ¶ 77.) Ohio law recognizes that "[i]n addition to a contract's express terms, every contract imposes an implied duty of good faith and fair dealing in the performance and enforcement." *Lucarell v. Nationwide Mut. Ins. Co.*, 97 N.E.3d 458, 463 (Ohio 2018) (citations omitted). Yet "there is no independent cause of action

11

for breach of the implied duty of good faith and fair dealing apart from a breach of the underlying contract." *Id.* at 464 (collecting cases). Thus, default judgment is also denied on this claim.

The Court finds that Fantasia is entitled to default judgment on its breach of contract claim against Megh and on its misappropriation of trade secrets claim against Megh and Karma Gems. For the reasons discussed above, default judgment is denied on Fantasia's other claims.

### B. Damages

Well-pleaded allegations in the complaint as to liability are taken as true when a defendant is in default, but not as to damages. *Ford Motor Co.,* 441 F. Supp. 2d at 848 (citations omitted)). "Rule 55(b)(2) provides courts considerable discretion in determining the appropriate damages amount[.]" *Simplot AB Retail, Inc. v. Bill & Scott Farms, Inc.*, No. 5:22-cv-133, 2023 WL 5670717, at *1 (W.D. Ky. Sept. 1, 2023) (citation omitted). Courts must exercise this discretion carefully, as "[e]ven in the context of default judgment, the Court has an obligation to ensure that there is a legitimate basis for any award of damages that it enters." *Zinganything, LLC*, 2016 WL 362359, at *7 (citation omitted). When the default rests on the failure to defend, the district court must "ascertain the amount of damages with reasonable certainty." *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009) (quotation marks and citation omitted).

Here, Fantasia provided a short affidavit from its president (Doc. No. 16-1) in support of its six demands for compensatory damages: (1) $257,066.31 from Megh for the discrepancy between the amount Fantasia pre-paid for the purchase orders and value of the product it received (Doc. No. 16-1 ¶ 3); (2) $8,000 from Megh for overpayment in shipping costs for the purchase orders (*id.* ¶ 4); (3) $34,276.22 from Megh for lost profits from Fantasia's inability to fulfill existing customer orders (*id.* ¶ 5); (4) $92,233.50 from Megh for bank loan fees and interest

12

Fantasia incurred to replace the capital it invested with Megh (*id.* ¶ 6); (5) $54,325 from Megh for lost profits from the Pigeon Forge customer (*id.* ¶ 7–8); and (6) $54,325 from Karma Gems for lost profits from the Pigeon Forge customer. (*Id.; see id.* ¶ 10.) Appended to the affidavit is the exclusivity agreement (Doc. No. 16-2) and a journal entry from the Ohio Department of Taxation setting the interest rate for calendar year 2025 at 5%. (Doc. No. 16-3.)

The Court is satisfied with Fantasia's showing as to the first category of compensatory damages for $257,066.31. The pleading includes a chart detailing four purchase orders made between April 10, 2022, and September 26, 2022, for a total of $455,689.06 (Doc. No. 5 ¶ 14) and another chart detailing nine payments Fantasia made on these purchase orders between April 11, 2022, and November 6, 2023, for a total of $394,000. (*Id.* ¶ 18.) Several of these payments were prompted by Megh's requests for additional funds, which are documented in the dated log of email and WhatsApp communications between October 7, 2022, and February 1, 2024. (*See generally* Doc. No. 5-2.) The complaint also includes an accounting of the product shipments Fantasia received from Megh between August 12, 2022, and February 12, 2024, for a total value of $136,933.69. (Doc. No. 5 ¶ 21.) In his supporting affidavit, Suit attests that "Fantasia pre-paid Megh $394.000.00 for Product . . . but only received $136,933.69 in Product from Megh, leaving a deficit of $257,066.31." (Doc. No. 16-1 ¶ 3.) This is sufficient evidence to recover a sum certain of $257,066.31 from Megh for product Fantasia paid for but never received, plus interest at the rate of 8% per annum accruing from the date of judgment in this case. *See also Shoney's N. Am. Corp. v. Elbanna Enter. One, Inc.*, No. 3:9-cv-781, 2010 WL 1491048, at *1 (M.D. Tenn. Apr. 12, 2010) (partially ordering damages where plaintiff explained "how it arrived at the precise" sum requested, and denying damages where the evidence presented did not allow the court "to evaluate

13

the reasonableness of the plaintiff's estimations based solely upon this briefing."); *Hitachi Med. Sys. Am., Inc. v. Lubbock Open MRI, Inc.*, No. 5:9-cv-847, 2010 WL 5129311, at *4 (N.D. Ohio Dec. 10, 2010) (finding that the successful party in a breach of contract action is entitled to post judgment interest under Ohio law).

The other five requests for damages are denied at this juncture because they are not "capable of ascertainment from definite figures contained in the documentary evidence[.]" *Wood v. Bronzie*, No. 1:2-cv-231, 2020 WL 4015247, at *2 (S.D. Ohio July 16, 2020). Other than Suit stating the amounts sought in his affidavit, Fantasia did not submit any documentation to explain how the damages from overpayment of shipping costs (Doc. No. 16-1 ¶ 4), lost profits from inability to fulfill customer orders (*id.* ¶ 5) bank loan fees and interest (*id.* ¶ 6), and lost profits from the Pigeon Forge customer (*id.* ¶¶ 7–8) were estimated or calculated.

For example, regarding Fantasia's request for $54,325 from both Karma Gems and Megh for lost profits from the Pigeon Forge customer (*id.*), the affidavit states that before Megh and Karma's interference, Fantasia's Pigeon Forge customer "customarily placed $350,000-$400,000 in orders per year with Fantasia[,]" but only placed $157,700 in orders in 2024 after Megh's interference. (*Id.* ¶ 8.) Based on this discrepancy, Suit estimates "lost sales for 2014 at $217,300" and states it is "reasonably certain" that Fantasia lost $54,325 in profits from those sales. (*Id.*) But in the absence of any evidence that the decrease in orders from that customer is traceable to Megh's breach of the exclusivity agreement, or that $54,325 is a realistic profit margin on $217,300 of Fantasia's sales, "[t]his Court is unable to determine th[ose] damages with certainty."[5] *Gen. Ret.*

---

[5] Similar uncertainty applies to Fantasia's other request for $34,276,22 for lost profits from inability to fulfill existing customer orders. (Doc. No. 16-1 ¶ 5.)

14

*Sys. of City of Detroit v. Onyx Cap. Advisors, LLC*, No. 10-cv-11941, 2012 WL 1018949, at *3 (E.D. Mich. Mar. 26, 2012); *compare Shoney's N. Am. Corp.*, 2010 WL 1491048, at *1 (declining to order damages for lost sales where the plaintiff conceded it was forced to estimate damages) *with Under the Weather, LLC v. Christmas Tree Shops, Inc.*, No. 1:18-cv-197, 2020 WL 13664179, at *4 (S.D. Ohio Jan. 31, 2020) (ordering damages for lost sales where movant provided accounting of sales before patent infringement, after patent infringement, and explained detailed equation leading to figure sought in damages). Further, though the complaint seeks damages from defendants "jointly and severally," (Doc. No. 5, at 14) it is unclear why Fantasia is entitled to recover $54,325 for lost profits from both Megh and Karma Gems. (Doc. 16-1 ¶¶ 9–10.)

In Ohio, a party may recover lost profits for a breach of contract if "(1) profits were within the contemplation of the parties at the time the contract was formed, (2) the loss of profits was a probable result of a breach of contract, and (3) the profits were not remote and speculative and may be demonstrated with reasonable certainty." *Marathon Ashland Petroleum, LLC. v. Selker Bros.*, No. 3:04-cv-7638, 2007 WL 1169322, at *2 (N.D. Ohio Apr. 18, 2007) (citing *Charles R. Combs Trucking, Inc. v. International Harvester Co.*, 12 Ohio St. 3d 241 (1984)). Fantasia has not met its burden to demonstrate these conditions for either of its lost profits requests. (*See* Doc. No. 16-1 ¶¶ 5 (request for lost profits from inability to fulfill customer orders), 8 (request for lost profits from sales to the Pigeon Forge customer).)

Additionally, Fantasia requests "court costs and expenses" from Karma Gems and Megh. (*See* Doc. No. 16-4 (Proposed Order), at 1.) Section 1920's plain language covers "fees of the clerk" and "[d]ocket fees." 28 U.S.C. § 1920. As to the filing fee, the docket represents that Fantasia paid $405. But Fantasia has failed to provide evidence—required in the current procedural

15

posture—of any additional expenses. *See Ramjet Aviation, Inc. v. My Parts Locator, Inc.*, No. 4:22-cv-1245, 2023 WL 166009, at *9 (N.D. Ohio Jan. 12, 2023) (awarding plaintiff the filing fee but denying process server costs because plaintiff failed to provide evidence of such costs). While costs usually "should be allowed to the prevailing party," Fed. R. Civ. P. 54(d)(1), before awarding them, "the court must determine that the expenses are allowable cost items and that the amounts are reasonable and necessary." *Johnson v. Metro Gov't of Nashville & Davidson Cty.*, 502 F. App'x 523, 543 (6th Cir. 2012) (cleaned up) (citation omitted). Accordingly, the Court awards Fantasia $405 to cover the filing fee.

For the sake of efficiency, the Court will withhold entry of final default judgment to give Fantasia the opportunity, if it wishes, to provide additional support for its requests for damages related to the overpayment of shipping costs (Doc. No. 16-1 ¶ 4), lost profits from its inability to fulfill customer orders (*id.* ¶ 5), bank loan fees and interest (*id.* ¶ 6), lost profits from the Pigeon Forge customer[6] (*id.* ¶¶ 7–8), and court costs and expenses (Doc. No. 16-4, at 1) by Friday, August 15, 2025. The Court will issue a final default judgment after receipt and review of the requested information pursuant to Fed. R. Civ. P. 55(b). Additionally, depending upon the nature of damages damages sought in the supplemental brief, the Court may hold an evidentiary hearing.

## IV.    CONCLUSION

Accordingly, it is ordered as follows:

1. As set forth above, Fantasia's motion for default judgment is partially granted and partially denied without prejudice.

---

[6] In its supplemental briefing, Fantasia should clarify why it is entitled to recover $54,325 in compensatory damages from both Megh and Karma Gems for lost sales to this customer. (*See* Doc. 16-1 ¶¶ 9–10.)

2. The Court will issue a final default judgment after receipt and review of the information requested below.

3. If Fantasia wishes, by Friday, August 8, 2025, it may file supplemental support for its requested damages related to overpayment of shipping costs, lost profits, bank loan fees and interest, and court costs and expenses.

4. The Court reserves the issue of whether to conduct a hearing on damages until after it has received and reviewed the supplemental materials.

5. If Fantasia does not wish to establish additional damages, it may so notify the Court on or before August 8, 2025, at which time the Court will enter judgment in accordance with its findings herein.

**IT IS SO ORDERED**.

Dated: July 18, 2025

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**